We'll proceed to the first case United States v. Lombardi. Good morning. May it please the Court. Yang-Chan Lee, Federal Defenders of New York, for Peter Lombardi. The Guidelines, Section 5F1.5, sets forth two specific requirements that must be met before an occupational restriction can be imposed. First, there must be a reasonably directed relationship between the defendant's offense and the defendant's occupation. And second, there must be a specific reason to believe that this defendant will reoffend absent an occupational restriction. And the reason that there are these two additional requirements for this particular kind of condition, in addition to those generally applicable to conditions of supervised release, is that occupational restrictions are disfavored. And for the obvious reason that they are antithetical to the principal purposes of supervised release, which is the rehabilitation and reintegration of the offender. This Court's seminal case in this area is Doe v. 1996, opinion by Judge Kearse. And Doe is a perfect example of how strictly and carefully this Court scrutinizes an employer notification condition, which qualifies as an occupational restriction, and will strike such a condition unless it meets both of these conditions. Why is there not a reasonably direct relationship between his work and the use of a computer? I mean, that's one of your arguments, in fact, is that he has to use a computer. That's right, Your Honor. It's one of the government's arguments, as well, is that because the same instrument, the internet, a computer with the internet was used to commit the crime, and because he might have to use the internet, a computer with internet work, therefore, somehow this is okay. There are two responses to this. The first response is simply that that just doesn't jibe with the plain language of Section 5F1.5, which requires a relationship between the defendant's crime and the defendant's occupation, not simply that there was some instrumentality that was similarly used. And more directly, and related. And by that, you mean, I mean, I'm just trying to think of an example of an occupation that was connected, one involving children, supervising children? Something like that. Yeah, I mean, the obvious relationship is in Doe, right? Doe was a tax preparer whose crime was preparing a false tax return. And even given that condition had been met, this Court still struck the condition because there was no reason to believe that Doe would re-offend. But back to Your Honor's question. This Court has explicitly rejected this kind of instrumentality-based argument to justify restriction on internet use. In Sofsky and Peterson, from the early part of the century, in 2000 and 2001, this Court said, well, you know, just because somebody used a, is committed of wire fraud or mail fraud would not justify a ban or restriction on their use of the mail or the phone. And this was even more so with something like the internet. And even in 2001, in Peterson, this Court said that the internet is virtually indispensable in the modern world. And obviously, that's even more true today. I mean- Is it reasonable for the probation department to want to monitor his computer use? Yes, Your Honor. That's sort of the- How can the probation department do that at a place of employment, unless there's some notice given to the employer? I understand, Your Honor. That's sort of the real reason they want the employee notification, right? So they can monitor the defendant's computer use. And respectfully, Your Honor, the simple answer to that is that they just can't. Monitoring, unless they meet 5F1.5, monitoring the defendant's work at computer would be another occupational restriction, right? And so we're just back to the same question. Is the government justified in monitoring the defendant's use of his computer at work? And again, we run through the same two factors of 5F1.5, and the answer is no. How many of these four restrictions that you- of the four restrictions that you are complaining about does this apply to? And do we have cases that run the other way as to some? That is, as to Standard Condition 6, the first one that you object to, which is a standard condition about using or sharing, isn't that pretty well covered by a Reese case? No, Your Honor. The principal condition I'm challenging is a special condition- Yeah, I know that- well, you challenge all four, and I want to know just how strongly you go. Yeah. Yes, Your Honor. Our principal focus is on the employer notification condition, is the special condition that's essentially an occupational restriction. As to the other three, Your Honor, I was relying on these two Seventh Circuit cases, Thompson and Capps, in which Judge Posner and the rest of the Seventh Circuit expressed, I think, rightful frustration with this idea of sort of this condition creep and supervised release, and that there's just so many conditions, and more and more intrusive conditions, and of course, therefore, more and more revocations. Was the Jenkins case . . . the Jenkins case was not decided when the district court imposed these conditions, was it? No, I believe not. I think that was April of 2017. Wouldn't it be an appropriate thing for us to do, given the worries you have, and given the Jenkins case, simply to send it back to the district court for reconsideration in the light of Jenkins? Well, Your Honor . . . You know, the government will make an argument about Jenkins and bail and so on, and we'll talk about that soon enough, but wouldn't that be a better way of doing things, and have this be kind of figured out in the first instance in the district court, talking about these cases, perhaps, but also having it reconsidered? Well, Your Honor, yes and no. Okay, so no, certainly, that is not the case regarding the principal condition we challenge or appeal, this occupational restriction, the employer notification condition. The law on that is well settled, in Doe in 1996, and in all the cases we cite. That is just clearly erroneous, even back in whenever the sentencing was. As to sort of the three other conditions that we didn't challenge at the sentencing, and that we raise the Seventh Circuit cases to object to, maybe the other two, the visitation and the sort of third-party risk notification, perhaps more clarification from the district court would be appropriate, but the visitation, the banning him from visiting, from being with anybody under 18, unless, you know, with the preapproval of the probation office, I think that's clearly erroneous, even before Jenkins. I mean, there's simply no basis for that at all. This defendant has no record of misbehavior with actual children. The district court ordered a . . . there's a court-ordered evaluation that concluded that he's not a risk to actual children, and the district court itself, three separate times at sentencing, at 126, 137, and 139, the appendix said, I have carefully reviewed the record. This defendant poses no risk to actual children. Why is this . . . I mean, they're standard conditions. Your Honor. Yeah, and so there was no objection to the standard conditions. How would the district judge even know that this was an issue in this case? I understand, Your Honor. So regarding the three other conditions, perhaps a remand for clarification on those is appropriate. But regarding, again, regarding the principal issue we raised on appeal, the employee notification condition, that doesn't come close to meeting the requirements of Section 5F1.5 and is unlawful. You know, the Internet . . . this Court has repeatedly said, to go back to Your Honor's question again, this Court has repeatedly said that you cannot justify a broad restriction on Internet use simply because the crime involved the Internet. You know, the Internet today is the combination of the classroom, newspaper, public square, there are First Amendment and Fourth Amendment interests involved. Even monitoring a defendant's home computer, Your Honor, even for someone who's convicted of using his personal computer to download child pornography, even monitoring of his own computer, this Court has said on a number of occasions that that monitoring has to be very narrowly tailored because of the First and Fourth Amendment interests involved. And so in this case, we're talking about a work computer, okay, which falls under 5F1.5, which is two specific requirements that are just not met here. And so we ask the Court to strike that condition. And we think the other three are unlawful on their face as well, but if the Court thinks that the additional consideration by the District Court on the other three is appropriate, that's fine as well. Thank you, Your Honor. Thank you. We'll hear from the Governor. Good morning, Your Honors, and may it please the Court. My name is Bradley King, and I represent the United States in its opposition to the defendant's appeal challenging various conditions of his supervised release. This Court should affirm the District Court's reasonable and limited requirement that a defendant convicted of possessing thousands of images and videos of child pornography notify his employer that he was convicted of an unspecified computer-related crime so that the Department of Probation can properly monitor his Internet use at work. This requirement is all the more reasonable in light of the fact that the defendant flagrantly violated his bail conditions by using a monitored computer that he was permitted to use for work. I don't understand barely legal. Things are either legal or not. I mean, there are many things that are legal that are yucky, but they're legal. The main thing is he was not supposed to use his computer for non-work things, but was it a work computer? It was a computer that he purchased, Your Honor, that made a representation to pretrial services that he would like to use it for work-related matters. Yes. It was then granted permission to do so. But it was not a computer that was his . . . a computer furnished him at work. No, it was not, Your Honor. How does the fact that this happened during bail affect the risk? I think it goes to the second prong of Section 5F1.5 of the Sentencing Guidelines. That is, there is reason to believe that absent the restriction imposed by the District Court, this defendant will continue to engage in conduct similar to that which he was convicted for. It is true, Your Honor, that there is a difference between the child pornography that he was convicted of and the pornography that he was accessing while on supervised . . . while on pretrial release. However, that pornography that he accessed was very close to the line, so close that he was remanded. I don't understand. I mean, you know . . . pornography, perhaps unfortunately, people are allowed to watch. Child pornography is a very serious crime. The line is the line that's been drawn. It may make very little sense to me, but an awful lot of the law that I apply makes very little sense to me. So I don't quite know what you're saying. What I'm saying, Your Honor . . . And just to follow up on that, one could argue that he was observing the line. He got close to the line, but he carefully did not cross it. Well, Your Honor, the sentence that was imposed here is designed to do two things. First to prevent recidivism, second to rehabilitate the defendant. Similarly, the restrictions that were imposed on him during pretrial release were intended to prevent him from committing additional crimes and to aid in his rehabilitation. He violated the conditions. He was not allowed to use that computer to look at pornography, any pornography. And the court presumably factored that into the sentence. Correct, Your Honor. And that's why . . . Now it's a somewhat different inquiry, is it not? Well, with respect to the second prong of 5F1.5, it's whether or not there's reason to believe that absent the restriction, this defendant will continue to engage in not the same conduct, but similar conduct. As to the first prong, what is the connection between his profession as an auto mechanic and his crime, possession of child pornography? As the defendant concedes, Your Honor, he claims that his profession will require him to use the internet repeatedly during his daily work. It's not 100% clear at this time whether or not the extent of his internet access will allow him to access potentially child pornography. And that's why the government's first argument on this appeal is that this issue is not ripe for this court's decision. There's no showing, nor could there be, that he has been offered employment with an employer that has internet, that will require him to use the internet. And if there . . . Is there any employment today where that isn't relevant? I mean, for somebody like me who is technologically deficient, it's a problem, but practically there's nothing that you can do today that doesn't allow you . . . require some access to the internet, isn't there? And he's required to be employed, correct? That's correct, Your Honor, yes. I think . . . Yet he's shackled. I think, Judge, the question is what sort of internet he might have access to. So in preparing for today's argument, I did have a chance to speak to the probation officer who was engaged in crafting the conditions, and if I could supplement and provide the court with some information about that, I will. I'm not sure you can tell us things that aren't on the record. I mean, they're very interesting, but I'm not sure you can tell us them. Well, Your Honor, it's possible, certainly, that someone can be employed in a job where they are not required to use the internet. This defendant has previously worked . . . This is a very odd case for another reason, because the sentence that was given to this fellow was a remarkably low one. I mean, the guidelines were way up here, 97 months minimum, I believe. You suggested 48 months, and the judge went down even below that, which says something about a judgment about what the chances for rehabilitation and all sorts of other things. It troubles me if we have somebody whom the court and you yourself thought was capable of rehabilitation, that you then impose requirements that make that very difficult. I just wonder what's going on here, what this guy is. Your Honor, he's someone who . . . Who was convicted of having a great deal of child pornography. We know that. But who also, Your Honor, has shown that he is unwilling to comply fully with conditions that are imposed on him in order to do two things, to prevent him from committing additional crimes and to aid in his rehabilitation. So yes, the 36-month sentence and the seven-year supervised release term are relevant here. They're exactly why this court's decision in Jenkins is an opposite, because he was given a term of imprisonment and corresponding supervised release term that will allow for rehabilitation. He's not being banned from employment for the rest of his life. During a discrete period of time in which he will be required to undergo intensive psychiatric monitoring, he is . . . Realistically, what employment can he get if he's not allowed to use a computer? Your Honor, I think the record suggests that he can get the very same employment that he had. He told his employer . . . I mean, auto mechanics have to be able to use computers these days. That's true, and the government is not suggesting that he be banned from using the computer. What the condition requires is that the employer be notified that this individual has a computer-related offense. Probation wants to monitor his computer usage. His argument is that no employer will hire him once they find out that he was convicted of a computer-related offense. Your Honor, that's entirely speculative, and it didn't occur here. He was accused of a computer-related offense, told his employer, and was allowed to remain employed. But until he's convicted, you know, there is no offense, and had he been fired, I don't say he would have had a federal thing, but there might have been a contract violation or something of that sort if they had fired him before he was convicted. Your Honor, this, again, I think speaks to the issue of why this matter is not ripe for the Court's decision. The question of whether and who and how he'll be . . . The cases you cite for not ripeness, the Bannon case, for instance, I was on that panel, and it wasn't right there because this was something that would take place at the end of a twenty-year sentence when . . . of a very long sentence, I think it was twenty Because of which, it was impossible to tell now what would be an appropriate control then, and where there was plenty of time before the person was released for the person to challenge. It had nothing to do with this situation, which, after all, if we don't allow him to challenge now, he's going to be challenging it at a time when he's looking for a job, and it will already get in the way. So the cases you cite for that don't help. The ripeness may be a separate issue, but the cases you cite don't help. Your Honor, at this time, it's unclear what his employment situation is going to be. However, what is clear is that monitoring of his internet usage is necessary to prevent him from committing additional crimes and to aid in his rehabilitation. Before you sit down, I'd like to ask you for a minute about the individualized assessment that's required in connection with a child association condition ordinarily. The district court here, as your adversary points out, made specific findings that Mr. Lombardi was not a direct threat to children, and in Jenkins, we invalidated a similar condition because the defendant had no history of harming or seeking out children. It seems to me that your position has got to be that we should presume in all cases of possession of child pornography that there is a cognizable risk, even absent an individualized finding, and therefore allow imposition of this kind of condition that precludes association with children. Is that your position, or is it something else? I think the position, Your Honor, is that in a case where a defendant does not challenge it, it's not unreasonable under the plain error standard to hold that the imposition of the condition was reasonable. That's our position. Even on plain error review, we require an individualized assessment by the district court in the ordinary course, and that seems to be lacking here, and in fact, we have the contrary kind of finding. So you don't believe that's plain error? I do not, Your Honor. Well, one other thing on this. Of course, they didn't challenge it, but they didn't challenge it before Jenkins. And it is Jenkins that may make it violate plain. If it is before Jenkins, this might have been more in doubt. Jenkins certainly adds, I mean, whether it is directly on point or not, you argue not because of the bail thing. But it does come after this, so that the failure to object has to be viewed in a slightly different way, doesn't it? Your Honor, in a situation in which the defendant was sentenced to a seven year term of supervised release. Jenkins does not apply because the overarching thrust of the opinion was that the defendant was sentenced to 25 years of supervised release. That's a vastly different scenario than what's presented here. I would like to, Judge, just correct a minor error. In our 28J submission, we indicated that the defendant was sentenced to 48 months of imprisonment. Of course, it was 36, and I apologize for that error. Thank you. Thank you. We'll hear the rebuttal. Three very quick points. On the ripeness issue, it's wrong in the law, and I think Your Honor understands that. But what I would like to point out is that even on page three of the sentencing recommendation, which is attached to the PSR, the probation office itself says that he's been an auto mechanic for a long time. And this is the field that he can easily return to. He has a degree in it, this is his job. He's no different than anybody else in this regard. Regarding the bail conditions, again, Your Honor's already got that right. This is, close to the line means he's on the right side of the line. This is a very clear, bright line. Except that he violated the condition. He did, Your Honor. It may not have been criminal conduct, but he wasn't supposed to do even that, right? Yes, Your Honor, but I have to say this, Your Honor, that this is a condition. We didn't challenge this condition as a condition of bail, and I don't know whether it would be lawful as a condition of bail. But this condition is not even close to being legal if it were a condition of supervised release. That he couldn't use his personal computer to look at the New York Times? I mean, it's clearly way too broad, okay? So all he did on supervised release was do what millions and millions of Americans do every day, which is go right up to that very clear, bright line that the law draws. And then finally, if the court has concerns about Mr. Lombardi being monitored, there are so many monitoring conditions that are part of this condition that we have not challenged. There is a search condition. There is monitoring of his home computer. There is a treatment condition. There is, of course, the registration condition, which is required under New York law. And so he will be watched very closely by the probation office, as well as by New York State. This condition that we challenge, in particular here, the employee notification condition is clearly unlawful under 5F1. Is your concern about that modulated at all by the fact that all he would need to do is disclose to a potential employer, maybe his former employer, that it was a computer-related crime rather than a child pornography? Not at all, Your Honor. First of all, that makes no difference under 5F1.5, right? So it's still illegal for the same reasons. And I think, realistically, Your Honor, I mean, it would be surprising to me that any employer wouldn't ask what kind of computer-related conviction. And then, because probation just sees this notification as essentially allowing them to open the door to monitor the employer's computer. Which way does it cut? That is, if I were employing somebody and was told that somebody did crimes with a computer, I might well think that these are crimes of embezzlement of things that concern me as the employer more directly, rather than the public at large. And then if a person told me that he'd done something which was awful, paid his sentence, but which was awful but didn't concern me, I might think that that is less bad than just this is a computer crook. I understand, Your Honor. I mean, every employer's different. Some would react probably very viscerally to a child pornography conviction and not want to have anything to do with somebody. Others, you're right, Your Honor. But again, I don't think it matters because either way, it's illegal under 5F1.5. And then just to follow what I was sort of finishing saying was that, again, probation just thinks of this as a door for them to go in to notify the employer so that they can monitor the defendant's work computer. And I would submit that very few employers would want to employ someone if they had to have their computer monitored by the probation office. If there are no further questions, I'll submit them. Will not reserve decision. Thank you. Well argued by both sides. Thank you.